218 P.3d 908 (2009)
2009 UT App 223
In the matter of R.B.F.S., A.M.F.S., R.E.F.S., and O.J.F.S., minors.
B.J.M. and A.F.M., Petitioners and Appellees,
v.
B.S., Respondent and Appellant.
No. 20080231-CA.
Court of Appeals of Utah.
August 13, 2009.
*909 Joshua F. King, Kaysville, for Appellant.
Randy S. Ludlow, Salt Lake City, for Appellees.
Before Judges THORNE, BENCH, and McHUGH.

OPINION
McHUGH, Judge:
¶1 B.S. (Father) challenges the termination of his parental rights in his four children. Father first claims that the district court did not have jurisdiction to grant A.F.M. (Mother) and B.J.M.'s (Stepfather) petition to terminate Father's parental rights.[1] Father also claims that the district court erred in refusing to look beyond the plain language of the relinquishment statute and in determining that a best interests hearing was not required before his parental rights were terminated. Next, Father argues that even if his parental rights were terminated, he has continuing inchoate rights that entitled him to be heard regarding the best interests of the children. Finally, Father contends that equitable principles preclude enforcement of his waiver of parental rights. We reverse and remand to the district court for proceedings consistent with this opinion.

BACKGROUND
¶2 Father and Mother are the natural parents of four minor children, R.B.F.S., A.M.F.S., R.E.F.S., and O.J.F.S. (the Children). The parties divorced in August 2005. One month later, Father signed an Affidavit and Waiver, Consent and Relinquishment of Legal Father (the Waiver) in the presence of a notary public. In doing so, Father "waive[d] any and all rights [he] ha[d] in relation to the [C]hildren," including
(a) [his] right to notice of adoption proceedings or any other proceeding relating to the [C]hildren,
(b) [his] right to consent or object to the adoption of the [C]hildren,
(c) [his] right to establish a substantial relationship with the [C]hildren,
(d) [his] other rights provided and protected in the Constitution, State Statutes and prior rulings of the Court.
Father also consented to the Children's adoption. In addition, Father and Mother executed a Stipulation to Modify Divorce Decree (the Stipulation), in which the parties incorporated the Waiver by reference. By this agreement, Father consented to the adoption of the Children by Mother's hypothetical next husband, despite the fact that "no prospective spouse ha[d] been identified."[2] According to the terms of the Stipulation, Father was to continue paying child support and medical expenses until the Children were adopted. Father made such payments until at least April 30, 2007, when his rights were terminated.[3] Further, despite the language in the Waiver and the Stipulation, Father continued to exercise parent-time with the Children.
¶3 In October 2005, Mother filed the Stipulation with the district court. The assigned judge (the First Judge) refused to approve *910 the Stipulation or to modify the Decree of Divorce because "a relinquishment of parental rights may only occur in the District Court in the context of an adoption proceeding... [, not] in a divorce action."[4] In dictum, the First Judge also noted that it was not "in the best interests of these children to leave them without a father figure" in the absence of even a prospective stepparent willing to adopt them.[5] Following that ruling, Mother continued to allow Father to visit with the Children until the termination was entered on April 30, 2007.
¶4 Mother and Stepfather married on February 10, 2007.[6] On April 30, 2007, Mother and Stepfather filed a Petition to Determine Parental Rights and an adoption petition in the district court. These petitions were filed separately. See Utah Code Ann. § 78B-6-112(1)-(2) (2008) (permitting a termination petition to be filed as a separate proceeding from an adoption petition in district court so long as the termination petition is filed "for the purpose of facilitating the adoption of the child[ren]").[7] The Petition to Determine Parental Rights was originally assigned to the First Judge. Because the First Judge was unavailable, the Second Judge signed the order terminating Father's parental rights. The Second Judge was not informed of the prior proceedings before the First Judge when he signed the termination order.
¶5 Father filed a motion to reconsider, outlining the First Judge's prior decision with respect to the Stipulation. The Second Judge accepted briefing and heard arguments on this issue. After considering additional briefing on whether the district court should look beyond the plain language of the relinquishment statuteUtah Code section 78B-6-126and whether it was required to consider the Children's best interests prior to terminating Father's rights, the Second Judge denied Father's motion to reconsider. This appeal followed.

ISSUE AND STANDARD OF REVIEW
¶6 Father challenges the district court's jurisdiction to terminate his parental rights, arguing that the district court may terminate parental rights only in conjunction with a valid adoption proceeding. We review questions of jurisdiction for correctness. See In re P.F.B., 2008 UT App 271, ¶ 10, 191 P.3d 49.[8]

ANALYSIS
¶7 Father argues that the district court lacked jurisdiction to terminate his parental rights in the Children because district courts can make such determinations only in conjunction with a valid adoption proceeding. See generally Utah Code Ann. § 78B-6-112(1) (granting district courts jurisdiction to terminate parental rights, an activity otherwise exclusively within the control of juvenile courts, when the termination petition is filed to facilitate an adoption). Father concedes that Stepfather filed a separate adoption petition simultaneously with the termination petition. Nevertheless, Father contends that the termination petition was not filed for the purpose of facilitating an adoption because Stepfather was ineligible to adopt the Children at the time the termination petition was *911 filed. In support of this argument, Father cites the version of Utah Code section 78B-6-135 that was in effect until April 29, 2007, which "require[d] that the [C]hildren reside in the home with the proposed stepfather for at least one year" before a decree of adoption could be entered, see Utah Code Ann. § 78-30-14(7)(b) (Supp.2006) (current version as amended at Utah Code Ann. § 78B-6-135(7)(b) (2008)). Because Stepfather had not resided with the Children for one year when he filed the adoption petition, Father asserts that the petition was invalid and therefore cannot confer jurisdiction upon the district court to terminate Father's parental rights.
¶8 Mother and Stepfather counter that as of April 30, 2007, the date they filed the petitions, stepparents could adopt after residing with the children for a year or at an earlier time "based on a finding of good cause," Utah Code Ann. § 78B-6-135(7)(b) (2008). Consequently, they argue, the statute did not preclude Stepfather from filing the adoption petition and the district court had jurisdiction to enter the order terminating Father's parental rights.
¶9 We agree with Mother and Stepfather that the 2007 amendment to section 78B-6-135(7)(b) took effect on the day Stepfather filed his petition for adoption. See id. § 78B-6-135 amendment notes. Thus, the amended version of that statute governs this appeal. That revised statute provides that a stepfather may adopt stepchildren with whom he has resided for less than a year only if the district court finds that there is good cause to allow an earlier adoption. See id. § 78B-6-135(7)(b).[9] In the absence of such a finding, Stepfather is ineligible to adopt the Children. See id.
¶10 Furthermore, the district court's subject matter jurisdiction to terminate parental rights is directly linked to the pending stepparent adoption. See id. § 78B-6-112 (permitting petitions for termination and adoption to be filed separately, so long as the termination is "for the purpose of facilitating the adoption of the child[ren]"). We believe this requirement that there be a valid adoption pending was influenced by the legislature's awareness that in the district court a best interests analysis is not required to terminate parental rights under the Utah Adoption Act when consent has been given. Compare id. § 78B-6-120 (listing whose consent is required for adoption), id. § 78B-6-126 ("A consent or relinquishment is effective when it is signed and may not be revoked."), id. § 78B-6-133(1), (2)(b) (requiring best interests analysis either to terminate parental rights or to determine custody when parental rights are not terminated where there is no consent for adoption), and In re T.H., 2007 UT App 341, ¶¶ 14-15, 171 P.3d 480 (interpreting reference to the Termination of Parental Rights Act in section 78B-6-133(1) to include a requirement that district court consider the children's best interests when terminating parental rights without consent for adoption), with Utah Code Ann. § 78A-6-514 (2008) (requiring juvenile court to conduct best interests inquiry whenever it receives a petition for voluntarily termination of parental rights). The case before us involves the enforcement of a consent to adoption in the district court and requires that a best interests analysis be performed only when the court considers the adoption petition. See Utah Code Ann. § 78B-6-137 (allowing entry of an adoption decree only if "the interests of the child[ren] will be promoted by the adoption").
¶11 We acknowledge that the legislature unambiguously permitted adoption and termination petitions to be filed separately. See id. § 78B-6-112(2)(b). However, the legislature also made jurisdiction in the district court for termination of parental rights conditional on the existence of a valid adoption proceeding. See generally id. § 78B-6-112(1) (giving district courts jurisdiction to terminate parental rights "for the purpose of facilitating the adoption of the child[ren]"). Typically, this requirement will assure that the result is not contrary to the best interests of the children. See id. § 78B-6-102(1) (stating that in adoption proceedings, "the best interests of the child[ren] should govern and be of foremost concern"); *912 id. § 78B-6-102(5)(c) (concluding that "adoptive children have a right to permanence and stability"). When there is not an adoptive stepparent ready to assume the role of the children's parent, it may not be in the children's best interests to terminate the existing parent-child relationship. By limiting jurisdiction over termination proceedings in the district court to those necessary to facilitate an adoption, the legislature has recognized the interests of the children in having a new parent dedicated to their care and support. Thus, we conclude that the legislature intended that an adoption petition must, at a minimum, be filed by a stepparent qualified to adopt under section 78B-6-135(7)(b) to confer jurisdiction upon a district court to terminate the existing parent-child relationship.
¶12 For an adoption petition to be valid, the district court must determine that either of the required elements of section 78B-6-135(7)(b) has been satisfiedthat Stepfather and the Children have resided together for one year or that there is good cause for an earlier adoption. Because Mother and Stepfather do not dispute that Stepfather had resided with the Children for less than one year at the time the adoption petition was filed, the district court was required to determine whether good cause existed before Stepfather could adopt the Children. Until such a determination is made, the issue of whether the district court has jurisdiction over the Petition to Determine Parental Rights cannot be resolved. No such findings have been made here. Accordingly, we remand to the district court for that determination. In doing so, the district court may consider all of the facts and circumstances before it.[10]

CONCLUSION
¶13 We reverse and remand to the trial court to determine whether it has jurisdiction to terminate Father's parental rights. A district court has jurisdiction to consider a termination petition only when the termination petition is filed in conjunction with a valid adoption petition. In this case, the district court must determine whether good cause exists to allow Stepfather to adopt the Children, despite the fact that he had resided with the Children for less than one year when the petition was filed. If good cause is lacking, the trial court does not have jurisdiction and must dismiss both the adoption petition and the termination petition. In contrast, if the district court finds that there is good cause to permit early adoption, Father may reassert the remaining issues he has raised on appeal.
¶14 WE CONCUR: WILLIAM A. THORNE JR., Associate Presiding Judge and RUSSELL W. BENCH, Judge.
NOTES
[1] Mother and Stepfather filed the termination proceeding pursuant to the 2007 version of the Utah Adoption Act. See Utah Code Ann. §§ 78-30-1 to -19 (2007). In 2008, the Adoption Act was recodified. See Utah Code Ann. §§ 78B-6-101 to -145 amendment notes (2008). Unless otherwise noted, the recodification did not substantively revise the relevant statutes. Accordingly, we cite to the current version of the code as a convenience to the reader.
[2] The Stipulation provides that "it is the intent of [Mother] to remarry. To facilitate the remarrying, the [p]arties agree that the [C]hildren should be legally free to be adopted by [Mother]'s new husband."
[3] Although the district court did not determine whether Father's child support payments were current, it did find that Father had assumed financial responsibility for the Children.
[4] Mother neither appealed the First Judge's order nor attempted to have the Waiver enforced in the juvenile court, whichunlike the district courthas jurisdiction to consider the voluntary termination of parental rights in the absence of a pending adoption proceeding, see Utah Code Ann. § 78-3a-104(1)(f) (2005) (current version as amended at Utah Code Ann. § 78A-6-103(1)(g) (2008)).
[5] At the time the Stipulation was filed, Mother had not yet married Stepfather.
[6] This is the date of marriage provided by Father. Neither the record nor Mother and Stepfather's brief confirms their actual date of marriage.
[7] This statute became effective the day that Mother and Stepfather filed the petitions.
[8] Because we are remanding on the jurisdictional question, a preliminary issue, see Housing Auth. v. Snyder, 2002 UT 28, ¶ 11, 44 P.3d 724, it is premature for us to consider Father's other arguments on appeal regarding the law of the case doctrine, the district court's refusal to look beyond the plain language of Utah Code section 78B-6-126, Father's standing to testify at the adoption proceeding, or the applicability of equitable principles to preclude enforcement of the Waiver.
[9] Mother and Stepfather do not dispute that Stepfather was not eligible to adopt the Children under the one-year requirement of Utah Code section 78B-6-135(7)(b).
[10] By supplemental notification pursuant to rule 24(j) of the Utah Rules of Appellate Procedure, see Utah R.App. P. 24(j), Father informed this court that Stepfather has moved to withdraw his petition to adopt the Children.