258 P.3d 583 (2011)
2011 UT 46
In the Matter of the ADOPTION OF R.B.F.S.; A.M.F.S.; R.E.F.S; and O.J.F.S., minor children.
B.J.M. and A.F.M., Petitioners,
v.
B.S., Respondent.
No. 20090836.
Supreme Court of Utah.
August 2, 2011.
*584 Randy S. Ludlow, Salt Lake City, for petitioners.
Joshua F. King, Kaysville, for respondent.
Larry S. Jenkins, Lance D. Rich, David J. Hardy, Salt Lake City, for amicus The Utah Adoption Council.

On Certiorari to the Utah Court of Appeals
Associate Chief Justice DURRANT, opinion of the Court:

INTRODUCTION
¶ 1 In 2007 A.F.M. (Mother) and B.J.M. (Stepfather), filed a petition in the district court to terminate the parental rights of B.S. (Father). At the same time, Stepfather also filed an adoption petition in the district court in which he sought to adopt Father's children. Acting pursuant to its authority under section 78B-6-112 (Section 112) of the Utah Adoption Act (the Adoption Act)[1]the provision governing a district court's jurisdiction over termination proceedingsthe district court terminated Father's parental rights.
¶ 2 The Utah Court of Appeals subsequently reversed the district court's order *585 after determining that it was unclear whether the district court had jurisdiction to grant Mother and Stepfather's petition to terminate Father's parental rights. Specifically, the court of appeals concluded that "[a] district court has jurisdiction to consider a termination petition only when the petition is filed in conjunction with a[n] . . . adoption petition."[2] Additionally, the court of appeals concluded that in a stepparent adoption case, the stepparent must satisfy the requirements contained in section 78B-6-135(7)(b) (Section 135(7)(b)) of the Adoption Act before a district court has jurisdiction to consider the stepparent's petition to terminate parental rights.[3] Because the district court had not considered whether Stepfather had satisfied these requirements, the court of appeals remanded the case and instructed the district court "to determine whether it ha[d] jurisdiction to terminate Father's parental rights."[4]
¶ 3 We granted certiorari to determine whether the court of appeals erred in reversing the district court's order on jurisdictional grounds. To resolve this question, we must address two issues. First, we must decide whether the court of appeals erred in concluding that a district court has jurisdiction to consider a termination petition only when the petition is filed in conjunction with an adoption petition. Second, we must determine whether in the context of stepparent adoptions, a district court's jurisdiction to hear and decide a petition to terminate parental rights is contingent on the stepparent's satisfaction of the requirements contained in Section 135(7)(b).
¶ 4 Based on the plain language of Section 112, we agree with the court of appeals' conclusion that an adoption petition must be filed before a district court has jurisdiction to consider a petition to terminate parental rights. We disagree, however, with the court of appeals' conclusion that, in the context of a stepparent adoption, a stepparent must satisfy the requirements contained in Section 135(7)(b) before a district court is vested with authority to consider a petition to terminate parental rights. This is because the requirements contained in Section 135(7)(b) relate only to a court's ability to enter a final adoption decree and not to whether a court has jurisdiction to hear and decide a petition to terminate. Based on this error, we reverse the court of appeals' decision and remand this case to the court of appeals for consideration of any remaining issues Father has properly raised before it.

BACKGROUND
¶ 5 The facts of this case are undisputed. Father and Mother, who divorced in August 2005, are the parents of four minor children. One month after Father and Mother divorced, Father signed a consent and relinquishment, waiving all of his rights in relation to his children and consenting to their adoption by Mother's hypothetical next spouse.
¶ 6 In February 2007, Mother married Stepfather. Two months later, Mother and Stepfather filed a petition in the district court seeking to terminate Father's parental rights. At the same time, Stepfather also filed in the district court a separate petition stating that he sought to adopt the children. After receiving Mother and Stepfather's termination petition, the district court judge signed an order terminating Father's parental rights without providing any notice to Father and without expressly considering whether the termination was in the children's best interests.[5] Upon learning of the order terminating his parental rights, Father filed a motion to reconsider. After the district court denied this motion, Father appealed to the Utah Court of Appeals.
¶ 7 At the court of appeals, Father challenged the district court's termination of his parental rights on several grounds, including that the district court had failed to consider *586 the best interests of the children[6] and that it lacked jurisdiction to terminate his parental rights.[7] With respect to the district court's jurisdiction, Father argued that the district court could terminate parental rights only in conjunction with a valid adoption petition. He characterized a valid adoption petition as one where the stepparent has satisfied the requirements contained in Section 135(7)(b). That section states that when a stepparent seeks to adopt his or her spouse's child "a final decree of adoption may not be entered until the child has lived in the [stepparent's] home . . . for one year, unless, based on a finding of good cause, the court orders that the final decree of adoption may be entered at an earlier time."[8]
¶ 8 The court of appeals accepted Father's argument and held that a district court has jurisdiction to terminate parental rights to facilitate a stepparent adoption only when (a) an adoption petition has been filed and (b) the stepparent has satisfied the requirements contained in Section 135(7)(b). Because the district court had not considered whether Stepfather had satisfied these requirements, the court of appeals reversed the district court's order terminating Father's parental rights and remanded the case to the district court.
¶ 9 Stepfather and Mother timely appealed the court of appeals' decision to this court. We have jurisdiction to hear this appeal pursuant to section 78A-3-102(3)(a) of the Utah Code.

STANDARD OF REVIEW
¶ 10 "On certiorari, we review the court of appeals' decision for correctness."[9]

ANALYSIS
I. BECAUSE STEPFATHER FILED BOTH A TERMINATION PETITION AND AN ADOPTION PETITION, THE COURT OF APPEALS ERRED IN REVERSING THE DISTRICT COURT'S TERMINATION OF FATHER'S PARENTAL RIGHTS ON JURISDICTIONAL GROUNDS
¶ 11 We granted certiorari to determine whether the court of appeals erred in reversing the district court's termination of Father's parental rights on jurisdictional grounds. To resolve this question, we must address two distinct issues. First, we must determine whether the court of appeals erred in concluding that a district court has jurisdiction to consider a termination petition only when the petition is filed in conjunction with *587 an adoption petition. Second, we must decide whether the court of appeals erred in concluding that, in a stepparent adoption case, a district court does not have jurisdiction to consider a petition to terminate until the stepparent has satisfied the requirements contained in Section 135(7)(b). Our resolution of both of these issues requires us to interpret several relevant provisions of the Adoption Act.
¶ 12 When faced with a question of statutory interpretation, "our primary goal is to evince the true intent and purpose of the Legislature."[10] To discern legislative intent, we begin by looking to the plain language of a statute.[11] As part of our plain language analysis, we read the language of the statute "as a whole"[12] and also in "relation to other statutes."[13] In so doing, we "read each term according to its ordinary and accepted meaning."[14] We also "assume that each term included in the [statute] was used advisedly"[15] and seek to give effect to "every word, clause and sentence . . . if such can be reasonably done."[16]
¶ 13 Based on our application of these rules of interpretation to the relevant statutory provisions at issue in this case, we first hold that the court of appeals was correct in concluding that a district court has jurisdiction to consider a termination petition only when the petition is filed in conjunction with an adoption petition. We further hold, however, that the court of appeals erred in concluding that, in a stepparent adoption, a district court lacks jurisdiction to consider a petition to terminate until the stepparent has satisfied the requirements contained in Section 135(7)(b). Based on this error, we reverse the court of appeals' decision and remand this case for further proceedings consistent with this opinion.

A. The Court of Appeals Correctly Concluded That a District Court Has Jurisdiction to Consider a Petition to Terminate Parental Rights Only When the Petition Is Filed in Conjunction With an Adoption Petition
¶ 14 Section 112(1) of the Adoption Act states that "[a] district court has jurisdiction to hear and decide a petition to terminate parental rights in a child if the party who filed the petition is seeking to terminate parental rights . . . for the purpose of facilitating the adoption of the child."[17] Subsection (2) of Section 112 further specifies that "[a] petition to terminate parental rights under this section may be: (a) joined with a proceeding on an adoption petition; or (b) filed as a separate proceeding."[18] After considering the plain language of these subsections, the court of appeals concluded that a district court has jurisdiction to consider a termination petition only when the petition is filed in conjunction with an adoption petition.
¶ 15 Although it is clear that Stepfather filed an adoption petition in the district court, Mother and Stepfather argue, as an additional ground for reversing the court of appeals' decision, that "there is no requirement in [S]ection [112] that an adoption petition must be filed prior to a proceeding to terminate parental rights." We find this argument unpersuasive. When read in harmony, subsections (1) and (2) set forth two prerequisites to a district court's ability to exercise jurisdiction over a petition to terminate parental rights: First, a district court must ensure that the termination petition is filed "for the purpose of facilitating the adoption of the *588 child."[19] Second, a district court must ensure that the termination petition was either joined with an already existing adoption proceeding or filed in a proceeding separate from a proceeding on an adoption petition.[20]
¶ 16 In reaching this conclusion, we note that Section 112(1) states that a district court has jurisdiction to hear a termination petition only when the petition is filed "for the purpose of facilitating the adoption of the child."[21] The Legislature's use of the term "the" indicates that termination of parental rights in the district court may occur only to facilitate a specific adoption. We also note that the Legislature's use of the terms "separate proceeding"[22] in Section 112(2) indicates that when a party chooses not to file a termination petition in an already existing adoption proceeding, the party must file both an adoption petition and a termination petition in separate proceedings. When used as an adjective, the term "separate" indicates that something is "set or kept apart,"[23] "maintained independently,"[24] or "distinct"[25] from something else. It would therefore be inconsistent with the common usage of the term "separate," to permit a party to file only a termination petition when no adoption petition has been filed. This is because if an adoption proceeding is not underway, the termination proceeding will not be "separate" from some other proceeding, but would instead be the only proceeding before the district court. Accordingly, whenever a party chooses not to file a termination petition in an existing adoption proceeding, there must always be two concurrent proceedingsa proceeding on an adoption petition and a proceeding on a termination petition.
¶ 17 For these reasons, we hold that a district court has jurisdiction to consider a termination petition only when the petition (a) is filed to facilitate a specific adoption and (b) is either joined with a proceeding on an adoption petition or filed as a separate proceeding to a proceeding on an adoption petition.

B. The Court of Appeals Erred in Concluding That a Stepparent Must Satisfy the Requirements Contained in Section 135(7)(b) Before a District Court Can Consider a Petition to Terminate
¶ 18 Having concluded that an adoption petition must be filed before a district court has jurisdiction to consider a petition to terminate parental rights, we must now determine whether the court of appeals erred in concluding that, in a stepparent adoption, the stepparent must satisfy the requirements contained in Section 135(7)(b) before a district court may consider a termination petition. Section 135(7)(b) states that when a stepparent seeks to adopt his or her spouse's child, "a final decree of adoption may not be entered until the child has lived in the home of th[e] adoptive parent for one year, unless, based on a finding of good cause, the court orders that the final decree of adoption may be entered at an earlier time."[26]
¶ 19 We disagree with the court of appeals' conclusion that, in a stepparent adoption case, a district court's jurisdiction to consider a termination petition is contingent on satisfaction of the requirements contained in Section 135(7)(b). As an initial matter, nothing in the language of Section 135(7)(b) suggests that these requirements have any relation to a district court's jurisdiction to hear and decide a petition to terminate parental rights. Instead, the section expressly states that its requirements relate to entrance of "a final decree of adoption."[27] We find this particularly *589 significant because the Adoption Act provides that a district "court may enter a final order terminating parental rights before a final decree of adoption is entered."[28]
¶ 20 Moreover, another section of the Adoption Act specifies that "[a] petition for adoption shall be filed within 30 days of the date the adoptee is placed in the home of the petitioners for the purpose of adoption, unless" an exception applies.[29] And it would be inconsistent with this provision to require a stepparent to live with a child for one year before filing an adoption petition.
¶ 21 Accordingly, based on the plain language of the Adoption Act, we hold that an adoption petition and a petition to terminate may be filed by a stepparent before he or she has satisfied the requirements contained in Section 135(7)(b). In the instant case, it is undisputed that Stepfather filed both an adoption petition and a termination petition in the district court. Because Stepfather satisfied these requirements, the court of appeals erred in remanding the case to the district court to determine whether it had jurisdiction to consider Mother and Stepfather's termination petition. Based on this error, we reverse the court of appeals' decision and remand this case for further proceedings consistent with this opinion.

CONCLUSION
¶ 22 We agree with the court of appeals' conclusion that an adoption petition must be filed before a district court has jurisdiction to consider a termination petition. But we disagree with the court of appeals' conclusion that, in a stepparent adoption case, a district court's jurisdiction to hear and decide a petition to terminate parental rights is contingent on the stepparent's satisfaction of the requirements contained in Section 135(7)(b). We therefore reverse the court of appeals' decision and remand this case to the court of appeals for consideration of any remaining issues Father has properly raised before it.
¶ 23 Chief Justice DURHAM, Justice PARRISH, Justice NEHRING, and Justice LEE concur in Associate Chief Justice DURRANT'S opinion.
NOTES
[1] See UTAH CODE ANN. § 78B-6-112(1) (2008). Since we granted certiorari in this case, the Legislature has amended the language of Section 112. We express no opinion on whether our analysis of this issue would be different under the revised version of Section 112.
[2] B.J.M. v. B.S. (In re R.B.F.S.), 2009 UT App 223, ¶ 13, 218 P.3d 908.
[3] Id. ¶ 11.
[4] Id. ¶ 13.
[5] At oral argument, Father argued that his due process rights were violated when the district court terminated his parental rights. We do not reach this issue, however, because it was inadequately briefed. See, e.g., State v. Timmerman, 2009 UT 58, ¶ 25 n. 5, 218 P.3d 590 (declining to address an issue that was inadequately briefed).
[6] Although the court of appeals did not reach this issue, it did note in dicta "that in the district court a best interests analysis is not required to terminate parental rights . . . when consent has been given." See B.J.M. v. B.S. (In re R.B.F.S.), 2009 UT App 223, ¶ 10, 218 P.3d 908. Because Father has not challenged this conclusion on appeal, we express no opinion on the legal correctness of the court of appeals' statement regarding the necessity of a best interests analysis. We do, however, note that some courts have suggested that a best interests analysis may be constitutionally required before a child's familial relationships can be terminated. See, e.g., David D. Meyer, The Modest Promise of Children's Relationship Rights, 11 WM. & MARY BILL RTS. J. 1117, 1119 (2003) ("Recent decisions by state and lower federal courts have held that children possess their own constitutional rights to maintain important family relationships."); see also Troxel v. Granville, 530 U.S. 57, 88-89, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (Stevens, J., dissenting) ("While this Court has not yet had occasion to elucidate the nature of a child's liberty interests in preserving established familial or family-like bonds, it seems to me extremely likely that, to the extent parents and families have fundamental liberty interests in preserving such intimate relationships, so, too, do children have these interests, and so, too, must their interests be balanced in the equation." (citation omitted)); id. at 93 n. 2, 120 S.Ct. 2054 (Scalia, J., dissenting) ("I note that respondent is asserting only, on her own behalf, a substantive due process right to direct the upbringing of her own children, and is not asserting, on behalf of her children, their First Amendment rights of association or free expression. I therefore do not have occasion to consider whether, and under what circumstances, the parent could assert the latter enumerated rights.").
[7] At the court of appeals, Father also argued that the relinquishment was invalid as a matter of statutory interpretation, that he should have been able to present evidence to the district court, and that the district court was estopped from enforcing the relinquishment.
[8] Id.
[9] Harold Selman, Inc. v. Box Elder Cnty., 2011 UT 18, ¶ 15, 251 P.3d 804.
[10] Salt Lake Cnty. v. Holliday Water Co., 2010 UT 45, ¶ 27, 234 P.3d 1105 (internal quotation marks omitted).
[11] State v. Harker, 2010 UT 56, ¶ 12, 240 P.3d 780.
[12] Id. (internal quotation marks omitted).
[13] R & R Indus. Park, L.L.C. v. Utah Prop. & Cas. Ins. Guar. Ass'n, 2008 UT 80, ¶ 23, 199 P.3d 917.
[14] Harker, 2010 UT 56, ¶ 12, 240 P.3d 780 (internal quotation marks omitted).
[15] Carrier v. Salt Lake Cnty., 2004 UT 98, ¶ 30, 104 P.3d 1208.
[16] CP Nat'l Corp. v. Pub. Serv. Comm'n, 638 P.2d 519, 523 (Utah 1981).
[17] UTAH CODE ANN. § 78B-6-112(1) (2008).
[18] Id. § 112(2) (emphasis added).
[19] Id. § 112(1).
[20] See Id. § 112(2).
[21] Id. § 112(1) (emphasis added).
[22] Id. § 112(2) (emphasis added).
[23] MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1067 (10th ed. 1993).
[24] Id.
[25] BLACK'S LAW DICTIONARY 1487 (9th ed. 2009).
[26] UTAH CODE ANN. § 78B-6-135(7)(b) (emphases added).
[27] Id. (emphasis added).
[28] Id. § 78B-6-112(3) (emphasis added).
[29] Id. § 78B-6-105(3) (emphasis added).